UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TANIYHA S. BROWN,

                          Plaintiff,                      20-cv-8652 (PKC)

       -against-                          OPINION AND ORDER

HIGHWAY TRANSPORT CHEMICAL, LLC
and CHRISTOPH CARDEA,

                          Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Taniyha Brown asserts that while traveling on the Cross Bronx Expressway, the back end of her Hyundai Sonata was struck by a Mack truck driven by defendant Christoph Cardea and owned by defendant Highway Transport Chemical, LLC ("Highway Transport"). Brown asserts that as a result of defendants' negligence or recklessness, she suffered "serious injuries" as defined under section 5102(d) of the New York Insurance Law. (ECF 1.)

        This action was filed in the Supreme Court, Bronx County, and was timely removed by defendants on the basis of diversity of citizenship, 28 U.S.C. § 1332(a)(1). Discovery is now closed. Defendants move for summary judgment pursuant to Rule 56, Fed. R. Civ. P., urging that Brown cannot satisfy her burden to demonstrate serious injury under the New York Insurance Law. For the reasons that will be explained, the motion will be denied.

BACKGROUND.

        At around 2 p.m. on July 24, 2019, Brown was driving home to Connecticut from Manhattan when the rear portion of her car was struck by a truck owned by Highway Transport and driven by Cardea. (Def. 56.1 ¶¶ 1-2; Pl. 56.1 Resp. ¶¶ 1-2.) Brown and Cardea pulled over

to the highway shoulder, exchanged contact information and called the police.  (Def. 56.1 ¶ 6; Pl. 56.1 Resp. ¶ 6.)  Brown and Cardea waited for about an hour, but the police never arrived, and the two drivers continued on their ways.  (Def. 56.1 ¶ 6; Pl. 56.1 Resp. ¶ 6.)

Brown does not recall feeling any pain when she arrived home and she did not immediately contact her primary care provider.  (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7.)  About a month later, her friend Lenora recommended that she visit a chiropractor, who treated Brown for two months before referring her to physicians.  (Def. 56.1 ¶ 7: Pl. 56.1 Resp. ¶ 7.)  Brown was employed as a home health aide and did not take any time off work as a result of the accident until about five months after it occurred, when she reported that she could no longer lift and care for her patients.  (Def. 56.1 ¶ 8; Pl. 56.1 Resp. ¶ 8.)

Brown asserts that as a result of the accident, she suffered the following injuries: 1) left shoulder joint infusion, rotator cuff tear, slap tear, synovitis, impingement, requiring rotator cuff tear debridement, acromioplasty, debridement of slap tear, synovectomy; 2) lumbar spine, L5-S1, posterior central disc herniation with compression of ventral thecal sac, lumbar disc displacement, radiculopathy requiring Lumbar percutaneous discectomy; 3) cervical spine, C5-6, disc bulge with compression of anterior thecal sac and partial effacement of anterior subarachnoid space, pain and/or muscle spasms; 4) left ankle, T2 signal in the distal Achille tendon consistent with high-grade partial tear in combination with tendinosis/tendinopathy; 5) left knee, joint effusion consistent with recent trauma, anterior subcutaneous soft tissue swelling and edema; and 6) brain, headaches, inflammatory changes in the paranasal sinuses and ethmoid air cells.  (Def. 56. ¶ 9; Pl. 56.1 Resp. ¶ 9.)  Brown does not seek damages for lost earnings or medical expenses.  (Id.)

SUMMARY JUDGMENT STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law. . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A genuine factual dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Truitt v. Salisbury Bank & Tr. Co., 52 F.4th 80, 85 (2d Cir. 2022) (quoting Anderson, 477 U.S. at 248). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

It is the initial burden of the movant to come forward with evidence sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d

79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). A court "may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted).

DISCUSSION.

New York's no-fault insurance law provides in relevant part that "there shall be no right of recovery for non-economic loss, except in the case of a serious injury. . . ." N.Y. Ins. L. § 5104(a). The statute defines "serious injury" to include "a personal injury which results in . . . significant limitation of use of a body function or system. . . ." Id. § 5102(d).

The New York Court of Appeals "has long recognized that the legislative intent underlying the No-Fault Law was to weed out frivolous claims and limit recovery to significant injuries. As such, we have required objective proof of a plaintiff's injury in order to satisfy the statutory serious injury threshold; subjective complaints alone are not sufficient." Toure v. Avis Rent A Car Sys., Inc., 98 N.Y.2d 345, 350 (2002) (quotation marks and internal citations omitted). "[T]he New York Court of Appeals held that a court should decide the threshold question of whether the evidence would warrant a jury finding that the injury qualifies as a 'serious injury.'" Yong Qin Luo v. Mikel, 625 F.3d 772, 776-77 (2d Cir. 2010) (citing Licari v. Elliott, 57 N.Y.2d 230, 236 (1982)).

On a summary judgment motion, New York courts apply a burden-shifting framework. First, a defendant must out make a prima facie case that the plaintiff did not suffer a serious injury, at which point the burden shifts "to plaintiff to come forward with sufficient evidence to overcome defendant's motion by demonstrating that she sustained a serious injury within the meaning of the No-Fault Insurance Law." Gaddy v. Eyler, 79 N.Y.2d 955, 957 (1992). The Second Circuit has stated:

> [O]n summary judgment, a defendant must establish a prima facie case that plaintiff did not sustain a "serious injury" within the meaning of Insurance Law § 5102(d). In support of its argument that there is no such serious injury, defendant may rely on the unsworn reports by plaintiff's physicians, but must provide evidence from its own physicians in the form of sworn affidavits. Once a defendant's burden is met, the plaintiff is then required to establish a prima facie case that he sustained a serious injury. For plaintiff to defeat a summary judgment motion, admissible evidence must be presented in the form of sworn affidavits by physicians.

Yong Qin Luo, 625 F.3d at 777. In that case, the Second Circuit ultimately concluded that deposition testimony from plaintiff's treating physician about her limited range of motion was sufficient to defeat defendants' prima facie case when considered alongside other subjective evidence of injury in the summary judgment record. Id. at 777-78. Although plaintiff did not file sworn expert submissions, her physician's deposition testimony and the summary judgment record "[t]aken as a whole" were "sufficient evidence to raise a question of fact issue as to serious injury pursuant to N.Y. Ins. Law § 5104(e)." Id.

Defendants have submitted an expert report and a supplemental report from Dr. Andrew N. Bazos, an orthopedic surgeon. (Becker Dec. Exs. P, Q.) Bazos reviewed Brown's medical records and examined her on December 14, 2022. (Becker Dec. Ex. P.) He states that Brown "sustained nothing more than minor, self-limited, soft tissue sprain/strain injuries of the cervical, thoracic, and lumbar spines, and left ankle." (Id. at 10-11.) He states that such injuries typically heal within 4 to 6 weeks and that Brown quickly returned to her pre-accident status. (Id. at 11.) He states that records from an exam taken one month after the accident did not reflect "any notations of fractures, dislocations, subluxations, or avulsions" and were "completely unremarkable." (Id.) Noting that Brown has since been under the care of several providers, Bazos opines that none of her care or any of her medical procedures were necessary as a result of the accident. (Id. at 11-12.) Bazos's supplemental report summarizes his review of

Brown's MRI records and concluded that they "are unremarkable for any findings that could be considered traumatic, and accident related." (Becker Dec. Ex. Q at 3.)

The Court concludes that through the opinions of Bazos, defendants have made out a prima facie case that Brown did not suffer a serious injury.

In response, Brown submits an affirmation from Alexios Apazidis, MD, who examined Brown on February 28, 2023. (ECF 40-6.) Apazidis has previously treated Brown, and performed an arthroscopy on her left shoulder on December 21, 2019, which he states revealed "a rotator cuff tear, a SLAP tear, impingement, and snyovitis." (Apazidis Aff. ¶ 22.) He states that the shoulder injuries he identified in 2019 "cannot possibly be attributed to any degenerative changes" and that a later examination of December 21, 2020 did not show "significant improvements" to the injuries. (Apazidis Aff. ¶ 23.)

Apazidis states that in connection with his 2023 exam of Brown, he reviewed his own medical records, as well as the records of physicians Dr. Andrew Merola, Dr. Leon Reyfman and Dr. Howard Baum. (Apazidis Aff. ¶ 5.) He states that MRIs conducted in August and October 2019 revealed that Brown had a herniated disc of the lumbar spine at L5-S1 level, a disc bulge of the cervical spine at the C5-C6 level, an "increased T2 signal in the distal Achilles tendon," a "mild joint effusion" on her left knee and bursitis of the left shoulder. (Apazidis Aff. ¶¶ 12-13.) Brown received a lumbar discectomy on December 4, 2019. (Apazidis Aff. ¶ 19.) She received a cervical discectomy on March 2, 2020. (Apazidis Aff. ¶ 27.) She received a lumbar laminectomy with a partial discectomy on October 1, 2020. (Apazidis Aff. ¶ 31.)

Apazidis states that during his examination of February 28, 2023, Brown's ranges of motion were restricted as to her left shoulder, cervical spine and lumbar spine, and he records the degrees of their restriction. (Apazidis Aff. ¶¶ 35-37.) He states that the injury to Brown's

- 6 -

lumbar spine is likely permanent, chronic and irreversible, and that the injury to her left shoulder is significant and has caused ongoing degeneration of her cartilage. (Apazidis Aff. ¶¶ 38-45.) He states that Brown has a limited ability to sit or stand for prolonged periods and has trouble walking, reaching overhead, carrying, lifting, bending and climbing. (Apazidis Aff. ¶ 45.) He states that the injuries were a direct result of the July 24, 2019 accident. (Apazidis Aff. ¶ 47.)

In reply, defendants urge that while a treating physician may opine on a plaintiff's injury, any such testimony must be based on information acquired in the role of treating physician. (Def. Reply at 13-15.) They note that Apazidis was not designated by Brown as an expert and that he does not directly respond to Bazos's opinions to the extent that they were based on scrutiny of certain MRIs.

But Apazidis acted as a treating physician to Brown, at least as to her left shoulder. His affirmation details his observations about the shoulder injury in 2019 and 2020, why he believed that surgery was necessary and why he concluded that the shoulder injury was caused by the July 2019 accident. (Apazidis Aff. ¶¶ 20-24.) He states that during the 2023 examination, the range of motion to Brown's left shoulder was limited as follows: abduction to 90 degrees, with 180 degrees the norm; adduction to 5 degrees, with 25 degrees the norm; flexion to 100 degrees, with 180 degrees the norm; extension to 15 degrees, with 60 degrees the normal; internal rotation to 25 degrees, with 90 degrees the norm; and external rotation to 85 degrees, with 90 degrees the norm. (Apazidis Aff. ¶ 35.)

At least as to Brown's left shoulder, Apazidis's opinions and observations are derived from his role as a treating physician, and are sufficient to defeat defendants' prima facie case as to her claimed injury. See Yong Qin Luo, 625 F.3d at 777-78. To the extent that Apazidis offers similar observations about injury to Brown's lumbar spine and cervical spine, the

degree to which he derived those opinions based on his role as a treating physician is not entirely apparent. Defendants may revisit the basis for any testimony by Apazidis about injuries to the lumbar spine and cervical spine in an in limine motion or at trial. The Court notes that Brown has also submitted certified records of her treatment from other physicians, which describe injury to her spine, shoulder, ankle and knee as a result of the accident and record Brown's subjective complaints of pain. A jury is best positioned to consider the record as a whole as to whether Brown suffered a serious injury. See id.

The remainder of defendants' arguments are either matters to be weighed by a jury or have no obvious bearing on the motion. These include the extent to which Brown's obesity and diabetes contributed to any injury, any inference to be drawn from the physical damage to the parties' vehicles, the proximity of hospitals in connection to Brown's drive from the situs of the accident to her home, Brown's knowledge about available treatment in light of her work as a home health aide, her choice to seek treatment from a practitioner in Manhattan, the public reputation of the spouse of one of Brown's attorneys, and Apazidis's professional disciplinary history.

CONCLUSION.

Defendants' motion for summary judgment is DENIED. The Clerk is directed to terminate the motion and the motion associated with defendants' Local Civil Rule 56.1 Statement. (ECF 35, 38.)

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 27, 2023